IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| KAYLA MARIE AVERY, KAHARI THOMAS, PRESTIGE LAWRENCE individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>ALBANY SHAKER DONUTS LLC, COHOES DONUTS LLC, THOMPSON ROAD DONUTS LLC, WORCESTER UPSTATE DONUTS INC., DUNKIN' DONUTS FRANCHISING LLC; and DOES 1-10, inclusive,<br><br>            Defendants. | Civil Case No.: _____<br><br><br><br>JURY TRIAL DEMANDED<br>_____ |

**ANTITRUST CLASS ACTION COMPLAINT**

Plaintiffs KAYLA MARIE AVERY, KAHARI THOMAS, and PRESTIGE LAWRENCE ("Plaintiffs"), individually and on behalf of all those similarly situated, by and through their counsel, bring this Class Action Complaint ("Complaint") against Defendants ALBANY SHAKER DONUTS LLC, COHOES DONUTS LLC, THOMPSON ROAD DONUTS LLC, WORCESTER UPSTATE DONUTS INC., DUNKIN' DONUTS FRANCHISING LLC ("Dunkin' Donuts"); and Does 1 through 10 (who collectively shall be referred to hereinafter as "Defendants"), on personal knowledge with respect to herself and her own acts, and on information and belief as to other matters, alleges as follows:

**I. NATURE OF ACTION**

1. Plaintiffs, on behalf of themselves, on behalf of the New York general public, and as a class action on behalf of Defendants' employees from July 9, 2014 through the present

("Class Members"), seeks millions of dollars in lost wages, plus triple damages, and interest, caused by Defendants' long-standing and illegal mutual non-solicitation agreements (i.e., agreements that Dunkin' Donuts franchisees could not solicit for employment the employees of Dunkin' Donuts and/or of other Dunkin' Donuts franchisees) and no-hire agreements (i.e., agreements that Dunkin' Donuts franchisees could not hire the employees of Dunkin' Donuts and/or other Dunkin' Donuts franchisees) that were all entered into by Dunkin' Donuts franchises throughout New York State for years and that had the intended and actual effect of significantly reducing Class Members' wages and salaries.  The genesis of the no-hire and non-solicitation agreements at issue were franchise agreements between Dunkin' Donuts and its franchisees, and between its franchisees, including, upon information and belief, Albany Shaker Donuts LLC, Cohoes Donuts LLC, Thompson Road Donuts LLC., and/or Worcester Upstate Donuts Inc.

2. In sum, Defendants engaged in *per se* violations of New York Antitrust laws and the Sherman Antitrust Act by entering into no-hire and non-solicitation agreements, for the express purpose of depressing and/or reducing market-based wages and benefit increases for Class Members that are typically associated with the active recruitment of employees and workers in a competitive industry.  While protecting and enhancing their profits, Defendants, through their no-hire and non-solicitation agreements, robbed Class Members millions of dollars-worth of wages for which Plaintiffs and the Class now seek relief.

## II. JURISDICTION AND VENUE

3. Plaintiffs bring this class action lawsuit pursuant to Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15 and 26, to recover damages suffered by the Class and the costs of suit, including reasonable attorneys' fees; to enjoin Defendants' anticompetitive conduct; and for

such other relief as is afforded under the antitrust laws of the U.S. for Defendants' violations of Section 1 of the Sherman Act, 15 U.S.C. § 1.

4. This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 1331, 1137, and Sections 4 and 16 of the Clayton Act, 15 U.S.C. §§ 15(a), 26.

5. Venue is proper in this District pursuant to Sections 4, 12, and 16 of the Clayton Act, 28 U.S.C. §§ 15, 22, and 26, and pursuant to 28 U.S.C. § 1391(b), (c), and (d), because, at all times relevant to the Complaint, one or more of the Defendants resided, transacted business, was found, or had agents in this District and for the reasons alleged above.

## III. THE PARTIES

6. Plaintiff Kayla Marie Avery, who at all relevant times was a resident of New York, is a former employee of Defendants Albany Shaker Donuts LLC and Cohoes Donuts LLC. Plaintiff Avery was employed by Defendants from approximately February 2015 through October 2017. Plaintiff Avery first worked as a crew member, then shift leader and assistant manager at a Dunkin' Donuts location in Loudonville, New York before she was promoted to manager and promised a higher rate of pay at a Dunkin' Donuts location in Cohoes, New York. Plaintiff Avery did not want to move Dunkin' Donuts location but Defendants persisted. Plaintiff Avery filled the role of assistant manager and manager at the Cohoes, New York location however she did not receive her higher rate of pay as promised to her until her sixth month of employment at the Cohoes, New York location. As a result, Plaintiff Avery was subject to and victimized by the non-solicitation and no-hire conspiracy between and among the Defendants, resulting in her having lost wages.

7. Plaintiff Kahari Thomas, who at all relevant times was a resident of New York, is a former employee of Defendant Thompson Road Donuts LLC. Plaintiff Thomas worked as a

shift leader at a Dunkin' Donuts location in Manlius, New York and then in Syracuse, New York from approximately June/July 2016 through April/May 2017 and again from July 2017 through August 2018. As a result, Plaintiff Thomas was subject to and victimized by the non-solicitation and no-hire conspiracy between and among the Defendants, resulting in her having lost wages.

8. Plaintiff Prestige Lawrence, who at all relevant times was a resident of New York, is a former employee of Defendant Worcester Upstate Donuts Inc. Plaintiff Lawrence worked as a cashier crew member and night shift crew member at a Dunkin' Donuts location in Rochester, New York from approximately May 2017 through September 2017. Plaintiff Lawrence requested to be transferred from the Chill Avenue Dunkin' Donuts location to the Jefferson Road location but was informed she would have to wait six months. As a result, Plaintiff Lawrence was subject to and victimized by the non-solicitation and no-hire conspiracy between and among the Defendants, resulting in her having lost wages.

9. Upon information and belief, Defendants Albany Shaker Donuts LLC and Cohoes Donuts LLC are New York limited liability companies, operating at least two locations between them doing business in New York as Dunkin' Donuts. Upon information and belief, both franchisees are owned or ultimately controlled by Mark Cafua. Defendant Albany Shaker Donuts LLC's agent of process is located at 897 Main Street, P.O. Box N, Sanford, Maine 04073, while Defendant Cohoes Donuts LLC maintains a principal place of business located at 78 Rensselaer Avenue, Cohoes, New York 12047. Upon information and belief, Defendants Albany Shaker Donuts LLC and Cohoe Donuts LLC both entered into franchise agreements with Defendant Dunkin' Donuts Franchising LLC that contained no-hire and non-solicitation provisions.

10. Defendant Thompson Road Donuts LLC is a New York limited liability company in Onondaga County New York with its agent of process located at 897 Main Street, P.O. Box N,

Sanford, Maine 04073. Upon information and belief Defendant Thompson Road Donuts LLC operates at least two stores in New York doing business as Dunkin' Donuts. Upon information and belief, Defendant Thompson Road Donuts LLC entered into a franchise agreement with Defendant Dunkin' Donuts Franchising LLC that contained no-hire and non-solicitation provisions.

11.     Defendant Worcester Upstate Donuts Inc. is a New York corporation in Monroe County New York with its agent of process located at 966 W. Linden Avenue, East Rochester, New York 14445. Upon information and belief Defendant Worcester Upstate Donuts Inc. operates at least two stores stores in New York doing business as Dunkin' Donuts. Upon information and belief, Defendant Worcester Upstate Donuts Inc. entered into a franchise agreement with Defendant Dunkin' Donuts Franchising LLC that contained no-hire and non-solicitation provisions.

12.     Defendant Dunkin' Donuts Franchising LLC is a Massachusetts limited liability company. Upon information and belief, Defendant Dunkin' Donuts Franchising LLC's principal place of business is located at 130 Royall Street Legal Dept. 3 East A, Canton, Massachusetts, 02021. Defendant Dunkin' Donuts Franchising LLC is a franchisor. Defendant Dunkin' Donuts Franchising LLC is in the business of donut stores, which it franchises throughout New York and the United States.  Upon information and belief, Defendant Dunkin' Donuts Franchising LLC entered into agreements with its franchisees, including Albany Shaker Donuts LLC, Cohoes Donuts LLC, Thompson Road Donuts LLC, and Worcester Upstate Donuts Inc. that contained no-hire and non-solicitation provisions.

13.     The true names and capacities, whether individual, corporate, associate, or otherwise, of Defendants sued herein as DOES 1 to 10, inclusive, are currently unknown to

Plaintiffs, who therefore sues Defendants by such fictitious names.  Does 1 through 10 are the other largest franchisees of Dunkin' Donuts in New York based on number of employees employed. Plaintiffs are informed and believe, and based thereon allege, that each of the Defendants designated herein as a Doe is legally responsible in some manner for the unlawful acts referred to herein in that they are additional co-conspirators.  Plaintiffs will seek leave of court to amend this Complaint to reflect the true names and capacities of the Defendants designated hereinafter as Does when such identities become known. Defendants and the Does 1-10 shall collectively be referred to as "Defendants."

14. Plaintiffs are informed and believe, and based thereon allege, that each Defendant acted in all respects pertinent to this action as the agent of the other Defendants, carried out a joint scheme, business plan or policy in all respects pertinent hereto, and the acts of each Defendant are legally attributable to the other Defendants.  Furthermore, Defendants in all respects acted pursuant to the mutual non-solicitation and no-hire agreements that were intended to suppress and had the effect of suppressing wages and salaries for the Class Members.

## IV. FACTS EVIDENCING THE CONSPIRACY

15. Defendants had a longstanding agreement to control their employees' wages and mobility by agreeing not employ or solicit each other's employees.

16. The mutual non-poaching and non-solicitation agreement itself constituted a *per se* violation of the Sherman Antitrust Act and the Donnelly Act between Defendants for decades until it was recently brought to light by the New York Attorney General's investigation commencing on or around July 9, 2018 in the course of the AG's investigation into similarly

illegal mutual non-solicitation and anti-poach agreements entered into between several of the largest fast food franchisors operating in New York and the United States.[1]

17.     Upon information and belief, Albany Shaker Donuts LLC, Cohoes Donuts LLC, Thompson Road Donuts LLC, Worcester Upstate Donuts Inc., and other franchisees, that own a total of approximately 1,300 Dunkin' Donuts stores in New York state, entered into franchisee agreements with no-hire and non-solicitation terms.

18.     As set forth herein, upon information and belief, all of the Defendants entered into the mutual non-solicitation agreements with the no-hire and non-solicitation terms above, with the common interest and intention to keep their employees' wage costs down, so that profits continued to rise or at least not be undercut by rising salaries across the industry.  As a result, Defendants engaged in anti-competitive behavior in advancement of a common and illegal goal of profiting at the expense of competitive market-based salaries.

19.     Defendants' agreements unreasonably restrained trade in violation of the Sherman Act 15 U.S.C. § 1, *et seq*. and constituted unfair competition and unfair practices in violation of the Donnelly Act, N.Y. Gen. Bus. Law § 340. Plaintiffs, on behalf of themselves and on behalf of the Class defined herein, seek to recover the difference between the wages and salaries that Class Members were paid and what Class Members would have been paid in a competitive market, in the absence of Defendants' unlawful agreements, treble damages, attorneys fees, and interest, allowed under the law.

## V. HARM TO COMPETITION AND ANTITRUST INJURY

20.     Defendants are in the business of operating donut stores where donuts and other fast food items are prepared and sold by crewmembers. In order to operate, Defendants owned

---

[1] https://www.washingtonpost.com/amphtml/news/wonk/wp/2018/07/09/11-states-launch-investigation-targeting-fast-food-hiring-practices/

other stores in New York and hired employees in their stores to complete all restaurant activities. Defendants, other than Dunkin' Donuts Franchising LLC, are all horizontal competitors of each other that sell the same product and compete for the same customers.

21. No-hire and non-solicitation agreements create downward pressure on fast food worker wages. No-hire and non-solicitation agreements restrict worker mobility, which prevents low-wage workers from seeking and obtaining higher pay. This artificially suppresses fast food worker wages. In fact, fast food worker wages have remained stagnant. Simply put, no-hire and non-solicitation agreements such as those entered into by Defendants serve no other purpose other than to suppress workers' wages.

22. Unrestricted competition and the Free Market are the foundations of the American economic system. That is because "[f]ree and open markets are the foundation of a vibrant economy. Just as competition among sellers in an open marketplace gives consumers the benefits of lower prices, higher quality products and services, more choices, and greater innovation, competition among employer helps actual and potential employees through higher wages, better benefits, or other terms of employment." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 2. Furthermore, Princeton University's professor of economics, Alan Krueger, echoes these remarks stating that he can't see a sound business justification for no-poach clauses other than to restrain competition between businesses' franchise locations.[2]

23. Upon information and belief, Defendants conspired not to actively solicit or hire each other's employees and workers as part of one overarching conspiracy to suppress the compensation of their employees, including Plaintiffs and Class Members. The desired effect was obtained. Defendants' conspiracy suppressed Plaintiffs' and the Class's compensation and

---

[2] https://www.qsrmagazine.com/employee-management/welcome-end-no-poach-clauses

restricted competition in the labor markets in which Plaintiffs and the other members of the Class sold their services, specifically the New York state quick service restaurants that provide fare similar to that offered by Defendants. It did so through an overarching agreement concerning mutual non-solicitation and no-hiring. The no-poaching agreements are only more pernicious to workers due to the fact that no-poaching agreements are invisible to workers and workers have no ability to argue or negotiate over them.[3]

24. Concerning the non-solicitation agreements, active solicitations have a significant beneficial impact for individual employees' compensation. As understood by Defendants, active recruitment by rival employers, here other franchisees doing business as Dunkin' Donuts, often include enticing offers that exceed an employee's wages, salary, and/or benefits, thereby incentivizing the employee to leave his or her current employment in order to receive greater compensation for his or her labor, or alternatively, allowing the employee to negotiate increased compensation from his or her current employer. Employees receiving active solicitation offers often inform other employees of the offer(s) they received, spreading information about higher wage and salary levels that can similarly lead to movement for the purposes of higher salary and wages and/or negotiation by those other employees with their current employer or others for greater compensation.

25. Active solicitation similarly affects compensation practices by employers. A franchisee that actively solicits other franchisees' employees or other workers will learn whether their offered compensation is enough to attract their competitors' employees, and may increase the offers to make their own company and its salaries more competitive in the marketplace. Similarly, companies losing or at risk of losing employees to competitors engaged in active

---

[3] http://knowledge.wharton.upenn.edu/article/how-fair-or-legal-are-non-poaching-agreements/

recruitment of employees or workers associated with their competitors may preemptively increase their employees' compensation in order to reduce their competitors' appeal.

26. Defendants' efforts to maintain internal equity coupled with their non-solicitation agreements ensured that their conspiracy caused the compensation of all their employees to be suppressed.

27. Furthermore, the effects of Defendants' no-hire and non-solicitation agreements are only exacerbated by the fact that such agreements are a widespread practice in the quick service restaurant industry.

## VI. INTERSTATE COMMERCE

28. During the Class Period, Defendants employed Plaintiffs and other Class Members in New York and numerous other states.

29. States compete to attract low wage workers, including fast food workers, leading employment in the industry to cross state lines.

30. Both Defendants and Plaintiffs and other Class Members view labor competition in the industry to be nationwide. Defendants considered each other's wages to be competitively relevant regardless of location, and many Class Members moved between states to pursue opportunities at Defendants' stores.

31. Defendants' conduct substantially affected interstate commerce throughout the United States and caused antitrust injury throughout the United States.

## VII. INTRASTATE COMMERCE

32. During the Class Period, the Class Members were employed in New York.

33. Defendants' conduct unfairly restrained Class Members' ability to find jobs in New York.

34. This unfair restraint kept Class Members' wages artificially low, primarily benefitting Defendants based in New York

## VIII.   CLASS ACTION ALLEGATIONS

35. Plaintiffs bring this case as a class action pursuant to Federal Rule of Civil Procedure 23(b)(3) on behalf of a Class consisting of:

> All persons who were employed by Albany Shaker Donuts LLC, Cohoes Donuts LLC, Thompson Road Donuts LLC, Worcester Upstate Donuts Inc., Dunkin' Donuts Franchising LLC, or any of the ten largest franchises of Dunkin' Donuts in New York State at any time from July 9, 2014 through the conclusion of this action (the "Class Period").[4]

36. Plaintiffs believe there are more than 1,000 current and former employees in the Class. Given Defendants' systemic failure to comply with United States and New York laws outlined in this case, the members of the Class are so numerous that joinder of all members is impractical. The Class is ascertainable from either Defendants' employment or hiring records.

37. Plaintiffs' claims are typical of the claims of the members of the Class, because all Class Members are or were employees who sustained damages arising out of Defendants' illegal mutual no-hire and anti-solicitation arrangements in violation of Section 1 of the Sherman Antitrust Act and Section 340 of New York General Business Law that resulted in wage suppression for all of the Class Members.

38. Plaintiffs will fairly and adequately represent the interests of the Class. Plaintiffs have no conflict of interest with any member of the Class. Plaintiffs have retained counsel competent and experienced in complex class action litigation with the resources and expertise necessary to litigate this case through to conclusion.

---

[4] Plaintiffs reserve the right to modify the class definition at a later date to conform to new facts learned, including the properly named entity Defendant(s).

39. Common questions of law and fact exist as to all members of the Class, and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to Plaintiffs and Class Members are:

a. whether Defendants agreed not to actively recruit each other's employees in positions held by the Class Members;

b. whether the mutual non-solicitation and anti-poaching agreements between Defendants were *per se* violations of the Sherman Act, 15 U.S.C. § 1, *et seq.*;

c. whether the mutual non-solicitation and anti-poaching agreements between Defendants were violations of the Sherman Act, 15 U.S.C. § 1, *et seq.* under a "quick look" analysis of the rule of reason;

d. whether Defendants violated the Sherman Act by agreeing to not actively recruit or solicit one another's workers in positions held by Class Members;

e. whether Defendants violated N.Y. Gen. Bus. Law § 340, by entering into agreements to not actively recruit each other's workers in positions held by Class Members;

f. whether and the extent to which Defendants' conduct suppressed wages and salaries below competitive levels;

g. whether Plaintiffs and the other Class Members suffered injury as a result of Defendants' agreements;

h. whether any such injury constitutes antitrust injury;

i. whether Class Members are entitled to treble damages; and

j.  the measure of damages suffered by Plaintiffs and the Class.

40.  Class action treatment is superior to any alternative to ensure the fair and efficient adjudication of the controversy alleged herein. Such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without duplication of effort and expense that numerous individuals would entail. No difficulties are likely to be encountered in the management of this class action that would preclude its maintenance as a class action, and no superior alternative exists for the fair and efficient adjudication of this controversy. The Class Members are readily identifiable from Defendants' employee rosters, payroll records or other company records.

41.  Defendants' actions are generally applicable to the entire Class. Prosecution of separate actions by individual members of the Class creates the risk of inconsistent or varying adjudications of the issues presented herein, which, in turn, would establish incompatible standards of conduct for Defendants.

42.  Because joinder of all members is impractical, a class action is superior to other available methods for the fair and efficient adjudication of this controversy. Furthermore, the amounts at stake for many members of the Class, while substantial, may not be sufficient to enable them to maintain separate suits against Defendants.

IX.  **STATUTE OF LIMITATIONS AND DEFENDANTS' CONTINUING VIOLATION**

43.  Defendants' conspiracy was a continuing violation in which Defendants repeatedly invaded Plaintiffs' and Class Members' interests by adhering to, enforcing, and reaffirming the anticompetitive agreements described herein.

44.     Before 2018, Plaintiffs and the members of the Class had neither actual nor constructive knowledge of the pertinent facts constituting their claims for relief asserted herein. Plaintiffs and members of the Class did not discover, and could not have discovered through the exercise of reasonable diligence, the existence of any conspiracy until at the earliest some time in 2018 when the investigation by the AG into non-solicitation agreements among fast food franchisees/franchisors including Dunkin' Donuts was first revealed publicly. This case is filed within four years of the moment when it was first revealed that the AG investigation had unearthed that Dunkin' Donuts had engaged in mutual non-solicitation and no-hire agreements with Albany Shaker Donuts LLC, Cohoes Donuts LLC, Thompson Road Donuts LLC, Worcester Upstate Donuts Inc. and other Dunkin' Donuts franchisees.

45.     Defendants engaged in a conspiracy that did not give rise to facts that would put Plaintiffs or the Class on inquiry notice that there was a conspiracy among Dunkin' Donuts and franchisees to restrict competition for Class Members' services through non-solicitation and no-hire agreements.

## X.     CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**VIOLATION OF SECTION ONE OF SHERMAN ACT**
**[15 U.S.C. § 1, *et seq*.]**

**(On Behalf of Plaintiffs and the Class)**

46.     Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

47.     Defendants, by and through their officers, directors, employees, agents or other representatives, have entered into an unlawful agreement, combination and conspiracy in restraint of trade, in violation of 15 U.S.C. § 1, *et seq*. Specifically, Defendants agreed to restrict

competition for Class Members' services through non-solicitation agreements and no-hire agreements, all with the purpose and effect of suppressing Class Members' compensation and restraining competition in the market for Class Members' services.

48. According to the Department of Justice ("DOJ") and Federal Trade Commission ("FTC"), "…no-poaching agreements, among employers…are *per se* illegal under the antitrust laws." *DOJ/FTC Antitrust Guidance for HR Professionals*, Oct. 2016, at p. 3. "It is unlawful for competitors to expressly or implicitly agree not to compete with one another, even if they are motivated by a desire to reduce costs." *Id*. at p. 2.

49. Defendants' conduct injured Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services.

50. Defendants' agreements are per se violations of the Sherman Act.

51. In the alternative, Defendants are liable under a "quick look" analysis where an observer with even a rudimentary understanding of economics could conclude that the arrangements in questions would have an anticompetitive effect on employees and labor markets.

52. Plaintiffs seek the relief set forth below, including underpaid and treble damages.

## SECOND CAUSE OF ACTION
**ILLEGAL CONTRACT IN RESTRAINT OF TRADE OR FURNISHING OF SERVICES
[New York General Business Law § 340, *et seq*., (the "Donnelly Act")]**

53. Plaintiffs incorporate by reference the allegations in the above paragraphs as if fully set forth herein.

54. New York General Business Law § 340(1) states: "[e]very contract, agreement, arrangement or combination whereby a monopoly in the conduct of any business, trade or commerce or in the furnishing of any service in this state, is or may be established or maintained, or whereby competition or the free exercise of any activity in the conduct of any business, trade

or commerce or in the furnishing of any service in this state is or may be restrained or whereby for the purpose of establishing or maintaining any such monopoly or unlawfully interfering with the free exercise of any activity in the conduct of any business, trade or commerce or in the furnishing of any service in this state any business, trade or commerce or the furnishing of any service is or may be restrained, is hereby declared to be against public policy, illegal and void".

55.     As stated above, the New York Attorney is investigating Dunkin' Donuts and believes that the no-hire and non-solicitation provisions of its franchise agreements, by and between itself and its franchisees, may constitute a contract, combination, conspiracy, or arrangement in restraint of trade.

56.     Through their conspiracy and actions as alleged herein, Defendants' efforts to restrain competition for and suppress compensation of their employees through their franchise agreements constitutes illegal agreements in violation of the Donnelly Act. Specifically, Defendants agreed to restrict competition for Class Members' services through non-solicitation and no-hire agreements, all with the purpose and effect of suppressing Class Members' compensation and restraining competition in the market for Class Members' services. Defendants' illegal conspiracy was substantially injurious to Plaintiffs and the Class Members.

57.     Defendants' conduct injured Plaintiffs and other Class Members by lowering their compensation and depriving them of free and fair competition in the market for their services, allowing Defendants to unlawfully retain money that otherwise would have been paid to Plaintiffs and other Class Members.

58.     The harm to Plaintiffs and members of the Class in being denied payment for their services in the amount of higher wages and salaries that they would have received in the absence of the conspiracy outweighs the utility, if any, of Defendants' illegal non-solicitation and non-

poaching agreements and, therefore, Defendants' actions described herein constitute an illegal restraint on trade within the meaning of N.Y. Gen. Bus. Law § 340.

59. Pursuant to N.Y. Gen. Bus. Law § 340(5), any person who is injured by a violation of N.Y. Gen. Bus. Law § 340 may bring a civil action to recover three-fold the actual damages, and attorneys' fees and costs.

60. In the alternative, Defendants are liable under a "quick look" analysis where an observer with even a rudimentary understanding of economics could conclude that the arrangements in questions would have an anticompetitive effect on employees and labor markets in the state of New York.

61. Plaintiffs seek the relief set forth below.

## XI. JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiffs demand a trial by jury on all issues so triable.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and a class of all others similarly situated, requests that the Court enter an order or judgment against Defendants including the following:

   a. Certification of the class described herein pursuant to Rule 23 of the Federal Rules of Civil Procedure;

   b. Appointment of Plaintiffs as Class Representatives and their counsel of record as Class Counsel;

   c. Compensatory damages in an amount to be proven at trial and trebled thereafter;

  d. Pre-judgment and post-judgment interest as provided for by law or allowed in equity;

  e. The costs of bringing this suit, including reasonable attorneys' fees and costs;

  f. Incentive awards to compensate Plaintiffs for their efforts in pursuit of this litigation;

  g. Interest under New York law; and

  h. All other relief to which Plaintiffs and the Class may be entitled at law or in equity.

Dated October 25, 2018.

    Respectfully submitted,
    Mermelstein Law
    Ackermann & Tilajef, P.C.

    S/
    Avi Mermelstein
    MERMELSTEIN LAW
    3625 Johnson Avenue, Suite 202
    Bronx, New York 10463
    Telephone: (646) 470-2105
    avi@mermelaw.com

    Craig J. Ackermann (pro hac vice pending)
    ACKERMANN & TILAJEF, P.C.
    1180 S. Beverly Drive, Suite 610
    Los Angeles, California 90035
    Telephone: (310) 277-0614
    Facsimile: (310) 277-0635
    cja@ackermanntilajef.com